IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEWAYNE DAVIS,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )   No. 19 C 4293
                                        )
BOARD OF EDUCATION OF                   )
WAUKEGAN COMMUNITY UNIT                 )
SCHOOL DISTRICT NO. 60, and             )
THERESA PLASCENCIA, in her              )
individual capacity and her             )
capacity as Superintendent              )
of Waukegan Community Unit              )
School District No. 60,                 )
                                        )
                    Defendants.         )

MEMORANDUM OPINION AND ORDER

In this action, plaintiff DeWayne Davis sues defendants the
Board of Waukegan Community Unit School District No. 60 ("the
Board") and Theresa Plascencia, in her individual capacity and
her capacity as the Superintendent of Waukegan Community Unit
School District No. 60. Plaintiff, a former deputy
superintendent working under Plascencia, brings constitutional,
statutory, and common law tort claims based on defendants'
conduct surrounding his termination. Defendants seek to dismiss
plaintiff's complaint under Rule 12(b)(6) of the Federal Rules
of Civil Procedure. Dkt. No. 33. For the reasons that follow,
defendants' motion is granted in part and denied in part.

1

I.

For purposes of defendants' motion, I accept plaintiff's well-plead factual allegations as true and draw all reasonable inferences in his favor. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citations omitted). The following allegations are drawn from plaintiff's second amended complaint, Dkt. No. 32.

At some point before June 2016, plaintiff spoke with Plascencia regarding his application to be the Deputy Superintendent of Strategy and Accountability for Waukegan Community Unit School District No. 60 ("the District"). Plascencia stated that she was looking for a long-term candidate for that position. Plaintiff responded that he could commit for five years. She replied "at least give me three" years and plaintiff responded that he could do so. Dkt. No. 32 at ¶ 14. Plaintiff then interviewed for the Deputy Superintendent position. He was hired in June 2016. He entered into an employment agreement that stated his compensation and benefits, but "had no termination provision or dates." *Id*. at ¶ 13.

In May of 2017, the District received a Freedom of Information Act ("FOIA") request from a local newspaper seeking Plascencia's application materials and resume. On May 23, 2017, Plascencia texted plaintiff asking about the location of her personnel file. That file contained her application materials

and resume. Unaware of the pending FOIA request, plaintiff responded that the file was in a locked cabinet in his office. The next day, Plascencia requested her file and plaintiff discovered it was missing from his office.

Thomas Morris, counsel for the District, responded to the FOIA request by stating that Plascencia's file could not be located. The District then filed a police report regarding the missing file. However, the file was not completely lost: Morris and Nicholas Alajakis, the District's Chief of Staff, each had copies.

The District also initiated an internal investigation. Before this investigation kicked off, plaintiff asked Alajakis why he did not release Plascencia's personnel file in response to the FOIA request. Alajakis responded that Plascencia did not want her personal information released. Ultimately, one investigator's report was inconclusive and the other concluded that Plascencia had a strong motivation to conceal her file as she had misrepresented her previous experience. The Board retained a law firm to conduct a second internal investigation.

Plaintiff was scheduled to meet with the investigating lawyers in June 2018. On June 21, 2018, Plascencia emailed plaintiff, stating that an attorney told her that plaintiff was unavailable for a scheduled interview. Plascencia admonished plaintiff that the interview was not optional. Plaintiff

scheduled a meeting with the lawyers on June 27, 2018. On that day, Plascencia reminded plaintiff about the meeting and asked him what he would tell the lawyers. He responded, "I'm going to tell them the truth." *Id*. at ¶ 36.

Plaintiff met with the lawyers and told them "Alajakis stated he had Plascencia's file because Plascencia did not want her file made public." *Id*. at ¶ 37. After that meeting, plaintiff went to Plascencia's office but she told him to wait in a conference room. He waited twenty minutes then returned to her office. There, he overheard a phone call in which the lawyers relayed plaintiff's statements to Plascencia. Plaintiff returned to the conference room. Plascencia then entered the conference room and terminated plaintiff, effective immediately. He was escorted out of the building.

Later that same day, plaintiff made a written request to meet with the Board "regarding the false allegations[1] against him." Dkt. No. 32 at ¶ 40. On June 28, 2018, he was informed that the Board would hear him on June 29, 2018, in a special meeting. Plaintiff requested a continuance so he could retain an attorney. He was denied.

---

[1] Plaintiff's complaint does not specify the content or source of these false allegations. Drawing a reasonable inference in plaintiff's favor, he is referring to the Plascencia's statements, which are recorded in the Board's memo. *See* infra at 5.

The Board met on June 29, 2018, without plaintiff present. It confirmed plaintiff's termination and entered a memo stating that it is the recommendation of the superintendent, that is, Plascencia, that plaintiff's contract with District 60 "conclude under 105 ILCS 5/10-22.4 effective naturally at the end of the current school year" and that his contract not be extended for the 2018-19 school year. Dkt. No. 32-2 at 1. The memo also stated that Plascencia had lost confidence in plaintiff's judgment, loyalty, candor, and support. On her recommendation, the Board found that plaintiff "showed a lack of candor and loyalty in this treatment of" Plascencia and others, "failed to address management and philosophical concerns in a collaborative and positive manner," and "contributed to a disclosure of confidential employee information" which violated an extant Board policy. *Id*.

On July 6, 2018, Plascencia sent plaintiff a letter informing him that the Board concluded sufficient cause existed for his termination and that his employment was terminated effective at the end of the 2017-18 school year. *See* Dkt. No. 32-1.

Also in July 2018, a reporter contacted Alajakis regarding plaintiff's dismissal. Alajakis provided the Board's memo to the reporter through a FOIA request. A local newspaper then ran an article about plaintiff and quoted the Board's memo,

specifically the findings that plaintiff lacked candor and loyalty with Plascencia, undermined her and brought her into disrepute, and contributed to the disclosure of confidential information.

Plaintiff asserts five claims. In Count I, he brings a claim under 42 U.S.C. § 1983 that defendants deprived him of property in violation of his right to due process provided in the Fourteenth Amendment. Count II alleges defendants retaliated against him in violation of the Illinois Whistleblower Act, 740 ILCS 174/20. Count III asserts that defendants tortiously interfered with plaintiff's employment contract. Count IV asserts a false light tort claim based on defendants' statements, which were published in a newspaper article. Count V asserts a retaliatory discharge claim.

## II.

To survive defendants' motion, plaintiff must allege "a short and plain statement" of each of his claims showing that he "is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, he must state a plausible claim that has "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

III.

Defendants challenge each of plaintiff's claims. Their
arguments fall into three broad categories, which I will address
in turn: plaintiff's due process claim is fatally flawed, the
Local Government and Governmental Employees Tort Immunity Act,
745 ILCS 10/1-101 *et seq*., (the "Tort Immunity Act") bars
plaintiff's state law claims, and that plaintiff's state law
claims are insufficiently plead.

A.

Defendants present three arguments for dismissing
plaintiff's due process claim: plaintiff has no protectable
property interest because he was an at-will employee, his
allegations show that he was afforded due process, and
Plascencia is protected by the doctrine of qualified immunity.

To state a due process claim, plaintiff must allege, "(1)
that he had a constitutionally protected property interest, (2)
that he suffered a loss of that interest amounting to a
deprivation, and (3) that the deprivation occurred without due
process of law." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir.
2007) (citing *Kiddy-Brown v. Blagojevich,* 408 F.3d 346, 360 (7th
Cir. 2005)). As plaintiff was employed in Illinois, Illinois law
will determine whether he had a property interest in his
employment. *Id*. (citation omitted). "[A] person has a property
interest in his job only where he has a legitimate expectation

of continued employment based on a legitimate claim of entitlement." *Id.* (citing *Krecek v. Bd. of Police Comm'rs of La Grange Park*, 646 N.E.2d 1314, 1318 (Ill. App. Ct. 1995)).

Plaintiff responds that he has asserted a valid property right in his employment contract. Defendants concede that plaintiff had an employment contract, even if the terms thereof are disputed. *See* Dkt. No. 38 at 4. But, an employment contract alone does not establish an expectation of continued employment: "The presumption in Illinois is that employment is at-will [.]" *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009) (citing *Moss*, 473 F.3d at 700). At-will employees have "no protectable property interest in their respective positions." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 624 (7th Cir. 2002) (citation omitted).

Plaintiff also contends that he had a property interest in continued employment because Plascencia set a term of three years in her initial employment discussions with plaintiff. True, one way to rebut the at-will presumption is to establish that the employment contract is for a specific term of duration. *See, e.g., Corrigan v. Cactus Int'l Trading Co.*, 771 F. Supp. 262, 264 (N.D. Ill. 1991) (citing *Atwood v. Curtiss Candy Co.*, 161 N.E.2d 355, 357 (Ill. App. Ct. 1959)).

However, as defendants note, the statute of frauds bars plaintiff from asserting a contractual right to a three-year

term of employment based on Plascencia's oral statements. *See McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1351 (Ill. 1997) ("By statute in Illinois, 'no action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless . . . in writing and signed by the party to be charged.") (quoting 740 ILCS 80/1). Plaintiff's alleged written "employment agreement" is silent on duration and thus provides no term of employment to rebut the at-will presumption. *See Dickens v. Quincy Coll. Corp.*, 615 N.E.2d 381, 384 (Ill. App. Ct. 1993) (to satisfy the statute of frauds "all the essential terms must be in writing"); *Amendola v. Backer & Spielvogel, Inc.*, No. 85 C 9161, 1988 WL 56240, at *4 (N.D. Ill. May 20, 1988) ("The duration of an employment contract is an essential term."). In either event, plaintiff has conceded this point, as he does not respond to defendants' statute-of-frauds argument.

Plaintiff also contends that the Board's invocation of Section 22.4 of Illinois' School Code[2] shows that he had an

---

[2] Section 22.4 of the School Code provides:

> Dismissal of teachers. To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause, to dismiss any teacher on the basis of performance and to dismiss any teacher whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24-10 to 24-16.5, inclusive. Temporary mental

expectation of continued employment. He argues that Section 22.4 provides for teacher termination subject to other School Code provisions that establish procedures for removing "teachers in contractual continued service," 105 ILCS 5/24-12. Plaintiff's argument is difficult to follow but ultimately does not address the predicate question of whether he had an expectation of continued employment. "Procedural guarantees, whether relied on or not, do not establish a property interest protected under the Fourteenth Amendment's Due Process Clause." *Rujawitz*, 561 F.3d at 688 (citing *Miyler v. Vill. of E. Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008)). Likewise, the fact that the Board had a policy that established procedures for disciplining professional staff does not rebut the presumption that plaintiff's contract was for at-will employment. *Id.* ("The *presence* of such disciplinary procedures does not establish a property right in continued employment . . . neither does the *use* of those procedures.") (emphasis in original).

Plaintiff's remaining arguments are unconvincing. While he correctly points out that any ambiguities in a contract should be construed against the drafter, that canon of contract

_____

or physical incapacity to perform teaching duties, as found by a medical examination, is not a cause for dismissal. Marriage is not a cause of removal.

105 ILCS 5/10-22.4.

construction does not allow me to read a term of duration into a contract where none exists. *See LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 564–65 (7th Cir. 1991). Nor is the allegation that plaintiff anticipated returning for the next school year sufficient to state a protected property interest. *Simpkins v. Sandwich Cmty. Hosp.*, 854 F.2d 215, 218 (7th Cir. 1988) ("It is well-settled that a unilateral expectation of continued employment does not create an entitlement that the due process clause protects."). The public policy 'exception' to at-will employment is to proceed with a claim for the tort of retaliatory discharge; that exception is not a grounds for writing new terms into an employment contract. *See Palmateer v. Int'l Harvest Co.*, 421 N.E.2d 876, 878 (Ill. 1981).

Accordingly, plaintiff has not pleaded sufficient facts to establish a protectable property interest. I do not reach defendants' other due process arguments. Plaintiff's due process claim is dismissed.

B.

Defendants argue that the Tort Immunity Act bars plaintiff's Whistleblower Act, tortious interference, false light, and retaliatory discharge claims.[3] "Under the *Erie*

---

[3] Plaintiff, a citizen or Oregon, invokes diversity jurisdiction for his state law claims against defendants, all Illinois residents. Dkt. No. 32 at ¶¶ 2-7. He seeks damages in excess of

doctrine, state rules of immunity govern actions in federal court alleging violations of state law." *Benning v. Bd. of Regents of Regency Univs.,* 928 F.2d 775, 777 (7th Cir. 1991) (citation omitted). Illinois law provides that immunity is an affirmative defense for which defendants bear the burden of proof. *Van Meter v. Darien Park Dist.* 799 N.E.2d 273, 280 (Ill. 2003). An affirmative defense generally does not merit dismissal pursuant to Rule 12(b)(6), but plaintiff can plead himself out of court by "admitting all the ingredients of an impenetrable defense in a complaint." *John K. Maciver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1014 (7th Cir. 2018) (internal quotations and citations omitted).

Defendants invoke four separate provisions of the Tort Immunity Act. The first two, sections 2-201 and 2-109, can be addressed together. The other two, 2-106 and 2-107, apply only to plaintiff's false light claim, and will be addressed together as well.

i.

Section 2-201 provides:

Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

---

$75,000. *Id.* at ¶ 2. Accordingly, I have jurisdiction over those claims and will consider defendants' challenges to them.

745 ILCS 10/2-201. Section 2-109 provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Read together, these sections provide "both public employees and the public employer with immunity against allegations that challenge discretionary policy determinations." *Murray v. Chi. Youth Ctr.*, 864 N.E.2d 176, 186 (Ill. 2007) (citations omitted).

Under these provisions, a municipality and its officials can claim immunity against injuries caused by an official's actions that are "both [1] a determination of policy and [2] an exercise of discretion." *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1,* 758 N.E.2d 848, 852 (Ill. 2001) (citation omitted). Policy determinations are "those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Id.* (citation omitted). Discretionary acts "are those which are unique to a particular public office," and do not include ministerial acts. *Id.* (internal quotation marks and citation omitted).

Plaintiff's claims are not presently doomed by sections 2-201 and 2-109. At this stage, I cannot draw the inference that Plascencia identified and balanced competing interests in order

to recommend plaintiff's termination, as defendants ask me to do. Taking plaintiff's allegations as true, Plascencia recommended plaintiff's termination as retaliation for his refusal to cover up her administration's unlawful withholding of her personnel file from a FOIA response. From these allegations, it is reasonable to infer that Plascencia's stated reasons for her action—plaintiff's lack of candor, loyalty, and support—are pretextual.

Plaintiff's allegations are similar to the claims addressed in *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 673 (7th Cir. 2009). There, the plaintiff brought a retaliatory discharge claim against her former employer, the Mayor of Chicago Heights, on the ground that she was terminated for exposing corrupt timesheet practices in his office. The mayor contended that she was fired for the unauthorized photocopying of timesheets. The court rejected the trial court's determination that the mayor was immune from liability under section 2-201, finding "a one-time decision to fire one employee . . . does not amount to a 'judgment call between competing interests.'" *Id*. at 679. ("In fact, we are at a loss to identify any competing interests at all."). Plaintiff has plausibly alleged that his termination was a one-time decision made in retaliation for his refusal to conceal a FOIA violation from investigators.

ii.

Defendants also argue that sections 2-107 and 2-106 shield the Board from liability for plaintiff's false light claim. Section 2-107 provides:

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 ILCS 10/2-107. Plaintiff responds that this section is inapplicable as it is limited to slander and libel claims.

Both sides' arguments rest on the plain language of section 2-107; no party cites interpretive authority. Research reveals that the Illinois Appellate Court has applied that provision to bar false light claims. In *Ramos v. City of Peru*, Adan Ramos and his wife sued the City of Peru because an advertisement in a local newspaper listed Ricardo N. Ramos as wanted for aggravated criminal sexual abuse, but printed Adan's image above Ricardo's name. 775 N.E.2d 184, 188 (Ill. App. Ct. 2002). The court held "[a] plain reading of section 2-107 confirms that the trial court did not err when it determined that the Ramoses' defamation, false light invasion of privacy, and personal injury claims were barred by the Tort Immunity Act." *Id*.

*Ramos* is instructive here because it illustrates that Illinois courts applying section 2-107 look beyond a claim's

label to consider whether the alleged conduct was libelous or slanderous. Plaintiff's false light claim alleges that defendants released written information showing that he "was lacking in integrity to discharge the duties of his employment and lacked ability in his profession." Dkt. No. 32 at ¶ 87. Illinois law provides that "words that impute a person lacks ability or otherwise prejudices that person in her or his profession" are defamation *per se*. *Solaia Tech., LLC v. Specialty Pub. Co*., 852 N.E.2d 825, 839 (Ill. 2006). Accordingly, Plaintiff's false light claim against the Board runs into a statutory barrier that protects a public entity against "injury caused by any action of its employees that is libelous or slanderous" and against injuries caused by "the provision of information . . . in writing." 745 ILCS 10/2-107. That claim is dismissed. As such, I do not reach defendants' argument under section 2-106, 745 ILCS 10/2-106.

C.

Defendants' remaining arguments challenge that plaintiff's Whistleblower Act, tortious interference, and false light claims are facially flawed, that plaintiff's claims against Plascencia in her official capacity are redundant, and that plaintiff cannot recover punitive damages against a local public entity.

The parties analyze plaintiffs' state law claims under Illinois law and I will do the same.

i.

Defendants argue that plaintiff's Whistleblower Act claim fails because there is no allegation that plaintiff refused to participate in an unlawful activity. Section 20 of the Whistleblower Act provides:

> An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act.

740 ILCS 174/20. Section 20.1 of the Whistleblower Act provides:

> Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing.

740 ILCS 174/20.1.

Plaintiff responds that he suffered retaliation because he refused to participate in covering up Plascencia's directive to unlawfully withhold her file from a FOIA-request response. His allegations plausibly support this theory. Plascencia asked plaintiff what he would tell investigators. He responded that he would tell the truth. Plaintiff then told the investigators that Alajakis withheld Plascencia's file because she did not want it released. Plaintiff overheard a phone call where the

17

investigators relayed his statement to Plascencia. He was then terminated, in part due to the Board finding he contributed to the disclosure of confidential information. Granted, plaintiff does not allege he was explicitly asked to assist in the cover-up he alleges, but that can reasonably be inferred from these facts. Moreover, defendants provide no reason to think the concealment of an unlawful activity is somehow lawful. Plaintiff's Whistleblower Act claim may proceed.

ii.

Defendants argue that plaintiff's tortious interference claim fails because defendants cannot interfere with their own contract. "In order to maintain a cause of action for tortious interference with a contract or prospective contractual relationship, the tortfeasor must be a third party to the contractual relationship." *Quist v. Bd. of Trustees of Cmty. Coll. Dist. No. 525*, 629 N.E.2d 807, 811 (Ill. App. Ct. 1994) (citation omitted). Plaintiff responds that his tortious interference claim seeks "a judgment only against Defendant Plascencia" for her interference in a contract between him and the Board. Dkt. No. 39 at 18. Accordingly, his tortious interference claim is dismissed to the extent it is alleged against the Board.

The issue remains whether Plascencia—an agent of the Board—can be a third party for purposes of plaintiff's tortious

interference claim. *Quist* answers this question in the negative. *Id.* at 812 (affirming dismissal of tortious interference claim predicated on college president's alleged interference with the college board's contract as the president was an agent of the board). Nor does plaintiff provide any reason to distinguish his case from that in *Quist*. Accordingly, his tortious interference claim is dismissed with respect to Plascencia.

iii.

I turn next to plaintiff's false light claim against Plascencia. Defendants argue that this claim fails because the Board memo was provided to a newspaper in response to a FOIA request and that plaintiff does not sufficiently allege that Plascencia knew her statements were false or that she recklessly disregarded whether they were true or false. Defendants also argue that Plascencia is entitled to a qualified privilege for statements made at a Board meeting. *See Krasinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 471(Ill. 1988) (defamation claims arising from an employer-employee relationship are subject to a qualified privilege which can be overcome by showing defamatory "statements were made with actual malice.").

These arguments prematurely raise factual issues about Plascencia's state of mind. Taking into consideration the allegations showing Plascencia's statements about plaintiff were pretextual, it also follows that she recklessly disregarded

whether those statements were true or false. That is sufficient at this stage. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Krasinski*, 530 N.E.2d at 471 ("'Actual malice' in this context requires the plaintiff to plead and prove that the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false.").

iv.

Defendants argue that claims against Plascencia in her official capacity should be dismissed as redundant on his claims against the Board. *See Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (*citing Kentucky v. Graham,* 473 U.S. 159, 165 (1985)); *see also Chandler v. Bd. of Educ. of City of Chicago*, 92 F. Supp. 2d 760, 764 (N.D. Ill. 2000). Plaintiff does not respond to this argument, thereby conceding it.

v.

Last, defendants argue that Section 2–102 of the Tort Immunity Act protects them against punitive damages. *See* 745 ILCS 10/2-102 (local public entities are not liable to an injured party for punitive damages; public officials are not liable for punitive damages for acts made while serving in an official capacity). Plaintiff responds only that he seeks all remedies available under the law and that his prayer for relief is "appropriate and is included for purposes of notice and to

avoid surprise." Dkt. No. 39 at 20. This perfunctory response, unsupported by authority, is insufficient. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

However, while defendants seek to dismiss plaintiff's entire claim for punitive damages, they do not address how Section 2-102 applies to claims against Plascencia in her individual capacity. Courts in this district have reached divergent conclusions on the question of whether Section 2-102 prevents an award of punitive damages against a public employee sued in her individual capacity who was serving in her official capacity at the time of a plaintiff's alleged injury. *Ohlrich v. Vill. of Wonder Lake*, 22 F. Supp. 3d 874, 879 (N.D. Ill. 2014) (Reinhard, J.) (collecting cases). The Illinois Supreme Court has not weighed in. *Id.* I agree with the court in *Ohlrich* that this question is better addressed at summary judgment with the benefit of a factual record on the scope of the public employee's official capacity. *See id*. Consequently, I only dismiss plaintiff's claim for punitive damages against the Board, a local public entity.

IV.

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's due process claim, his false light claim against the Board, his tortious interference claim, and his claims against Plascencia in her

official capacity are dismissed, as is his claim for punitive damages against the Board. Plaintiff's remaining claims may proceed.

**ENTER ORDER:**

Elaine E. Bucklo
United States District Judge

Dated: April 13, 2020